## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CONRAD CASE and**
**CLYDE NICHOLS, JR. on behalf**
**of themselves and all others similarly**
**situated,**

      **Plaintiffs,**

                                **Case No.:**

**v.**                                **<u>CLASS ACTION ALLEGATIONS</u>**

**GRADY JUDD, in his official capacity as**
**Polk County Sheriff,**

      **Defendant,**
_____/

### <u>CLASS COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COMES NOW Plaintiffs, CONRAD CASE and CLYDE NICHOLS, JR., on behalf of themselves and all others similarly situated, pursuant to the Uniformed Services Employment and Re-employment Act, 38 U.S.C. § 4301, *et seq*., ("USERRA") and sues Defendant, GRADY JUDD, in his official capacity as Polk County Sheriff, (hereinafter referred to as "POLK COUNTY SHERIFF") and alleges:

### <u>JURISDICTION AND VENUE</u>

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367 and 1441(b).

2.     Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

**PARTIES**

3.    Plaintiff, CONRAD CASE, is an adult resident of Polk County, Florida, is a person who is entitled to protection pursuant to 38 U.S.C. § 4311, since at all times material hereto he was a "uniformed service member" as a member of the United States Army, Army National Guard, and as a reservist in the United States Army.  At all times material, Plaintiff Case was an "employee" of Defendant within the meaning of 38 U.S.C. § 4303(3).

4.    Plaintiff, CLYDE NICHOLS, JR., is an adult resident of Gilchrist County, Florida, is a person who is entitled to protection pursuant to 38 U.S.C. § 4311, since at all times material hereto he was a "uniformed service member" as a member of the United States Army and United States Navy.  At all times material, Plaintiff Nichols was an "employee" of Defendant within the meaning of 38 U.S.C. § 4303(3).

5.    The named Plaintiffs were previously employed by Defendant and applied for promotions with Defendant on several occasions.  At all relevant times, Plaintiffs were separated from service in the uniformed services under honorable conditions and were entitled to veteran preference as mandated by Section 295, *Florida Statutes*, but were willfully denied use of the veterans preference by Defendant.

6.    Defendant, GRADY JUDD, was and is the duly elected Sheriff of Polk County, Florida.  At all times material to this cause of action, Defendant operated the Polk County Sheriff's Office in his official capacity.  The Polk County Sheriff's Office is an organization formed pursuant to the laws of the State of Florida, is located within the confines of Polk County, Florida, operates within the State of Florida, and is a citizen of the State of Florida.

## GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.      Congress enacted USERRA in 1994 to, among other things, "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service."

8.      Under USERRA, a person who is a member of, or has an obligation to perform service in, a uniformed service may not be denied a promotion on the basis of his membership or obligation.

9.      USERRA is liberally construed to achieve its purpose of protecting those who serve in our armed forces from inequitable employment practices.

10.     Over the past few decades, the Polk County Sheriff's Office has knowingly refused to comply with Florida State law, which guarantees that certain veterans of the U.S. Armed Forces shall receive a veteran preference in promotions.

11.     Pursuant to Florida's Veterans Preference Law, an employee of the state or any of its political subdivisions, who served in the Armed Forces of the United States and is discharged or separated therefrom with an honorable discharge, "shall also be awarded preference in promotion and shall be promoted ahead of all others who are as well qualified or less qualified for the position." *Fla. Stat.* §295.09.  When the employer utilizes an examination for promotion, "such person shall be awarded preference points, as provided in s. 295.08, and shall be promoted ahead of all those who appear in an equal or lesser position on the promotional register, provided he or she first successfully passes the examination for the promotional position." *Id*. The preference, however, is only applied to the veteran's first promotion after reinstatement or reemployment. *Id*.

12.     For positions in which an examination is used to determine qualifications for promotion, 10 points are added to the earned ratings of wartime veterans and 5 points are added for veterans or current members of any reserve component of the United States Armed Forces if the individual obtained a qualifying score on the examination for the position. *Fla. Stat*. §295.07-08.  "The names of persons eligible for preference shall be entered on an appropriate register or list in accordance with their respective augmented ratings." *Fla. Stat*. §295.08.

13.     Florida's veteran preference law has been in the law of the State since 1947.

14.     Florida Statutes expressly incorporate and adopt USERRA's requirements and "the refusal of any state, county, or municipal official to comply therewith shall subject him or her to removal from office." *Fla. Stat.* §115.15.

15.     Although USERRA and Florida's veteran preference law clearly applied to the Polk County Sheriff and mandated that Defendant provide the veteran preference to promotional opportunities, for the past few decades Defendant has engaged in a pattern or practice of (1) denying members of the uniformed services promotions due to their membership in the uniformed services and (2) refusing to follow Florida's veteran preference law.

16.     As a result, hundreds and potentially thousands of veterans have been denied promotions and the veterans' preference that both federal and Florida law guarantee.

17.     Defendant's failure to adhere to USERRA and Florida's veteran preference law has caused significant harm to veterans who applied for promotions within the Polk County Sheriff's Office, including the delay in promotions to eligible veterans, which caused reduced pay, reduced seniority, and reduced benefits including pension benefits and health benefits.

18.     In this action, the named Plaintiffs seek to represent all individuals who were:

(1) denied promotions due to their membership in the uniformed services and (2) denied the right to receive Florida's veteran preference by the Polk County Sheriff over the past 30 years. Similarly situated employees, including Sheriff Deputies, Sergeants, and Lieutenants, were subjected to the same pattern or practice of (1) denying promotions due to membership in the uniformed services and (2) refusing to follow Florida's veteran preference law, and harmed in the same manner as the Plaintiffs.

19.    As described more fully below, Defendant's failure to (1) promote members of the uniformed services and (2) provide eligible veterans with the veteran preference in promotions violates USERRA, 38 U.S.C. §§ 4311, 4316, as it constitutes the denial of employment benefits and discrimination.

20.    Additionally, Defendant has failed to treat veterans' military-related absence from work as continuous employment in violation of 38 U.S.C. § 4316.

21.    To be eligible for promotion, Defendant's policy dictates that the candidate for promotion have a college degree and pass Defendant's promotional exam.  Once the candidate passes the exam, the candidate is placed on Defendant's promotions list.

22.    However, as a practice, Defendant required candidates for promotion, such as Plaintiffs, to "make rounds" and meet with members of the chain-of-command who were responsible for making promotion decisions.  If a candidate for promotion (such as Plaintiffs), was unable to make rounds due to absence related to military service, then the candidate would not be considered equally to those candidates who were able to make rounds during the promotional process.

23.    Uniformed services members were not provided equal opportunity for

promotions until the conclusion of their service in the uniformed services.  Put simply, you get out, you get promoted.

24.     The named Plaintiffs were affected by these unlawful practices in the manner described below.

### FACTUAL ALLEGATIONS
### (Plaintiff Conrad Case)

25.     For more than thirty (30) years, Plaintiff Case has proudly served as a member of the United States Army, Army National Guard, and as a reservist with the United States Army (1990-2010).  From approximately 2009 to present, Plaintiff Case served as a United States Army reservist.  When Plaintiff Case was not deployed, he had reservist obligations once per month.

26.     Plaintiff Case currently holds the rank of Lieutenant Colonel and has been responsible for supervising hundreds of individuals during his military service.

27.     During Plaintiff Case's decorated military career, he was a two-time Bronze Star recipient, a platoon leader, company commander, combat advisor, and served in the Army's intelligence detachment.

28.     Plaintiff Case holds two (2) Master's Degree, plus significant military education.

29.     On or about July 30, 1990, Plaintiff Case began his employment with Defendant.  Throughout his employment with Defendant, Plaintiff case worked as a Deputy Sheriff.

30.     Beginning in or around 1999, Plaintiff was on Defendant's promotional eligibility list.

31.     From March 15, 2003 to May 21, 2003, Plaintiff Case served active duty as a First Lieutenant during Operation Noble Eagle/Operation Enduring Freedom.

32.     From March 9, 2004 to March 14, 2005, Plaintiff Case served active duty as a First Lieutenant and Captain during Operation Noble Eagle/Operation Enduring Freedom.

33.     From March 15, 2005 to October 31, 2006, Plaintiff Case served active duty as a Captain for the Active Guard Reserve (AGR).

34.     From August 18, 2007 to October 8, 2009, Plaintiff Case served active duty as a Captain during Operation Noble Eagle.

35.     From March 31, 2011 to December 27, 2013, Plaintiff Case served active duty as a Major during Operation Enduring Freedom.

36.     For each tour of duty, Plaintiff Case was honorably discharged.

37.     Each time that Plaintiff Case returned from his active duty service, he provided Defendant's Human Resources and Payroll departments with his DD-214 forms.

38.     Since approximately 1999, Plaintiff Case was on Defendant's promotional eligibility list; however, Plaintiff Case was never promoted by Defendant.  Except 2001, Plaintiff Case was eligible for promotion every year from 1999 to 2014, but was not promoted.

39.     Plaintiff Case reviewed Defendant's promotion eligibility lists and noticed that his name was taken off of the list on several occasions during his military activations.

40.     During Plaintiff Case' activation in 2005 and 2006, Defendant drafted a memo recommending that Plaintiff Case be terminated from his employment with Defendant.

41.      In approximately 2006, Plaintiff Case was scheduled to deploy to Washington, D.C. for Operation Noble Eagle.  A full-time position was available in Plaintiff Case's unit,

for which Plaintiff Case applied, but was not selected for the position. Plaintiff Case asked Sergeant Steve Hammerberg why he was not selected for position and was told by Sgt. Hammerberg that it was because Plaintiff Case was taking military leave and would not be there.

42.     In or around late 2010/early 2011, shortly before Plaintiff Case was set to deploy for Afghanistan, Plaintiff Case spoke with Captain Robert Oakman regarding career advancement. Captain Oakman told Plaintiff Case that it was "kind of hard to promote you when you're not here."

43.     On July 28, 2010, Melissa Calandros (Career Development Specialist) sent a memorandum to Plaintiff Case informing him that he was activated for 1,444 days from October 2002 to July 1, 2010 and that Plaintiff Case would have to take the October 2011 promotional exam.

44.     From approximately March 31, 2011 to December 27, 2013, Plaintiff Case was deployed to Afghanistan. Upon return from deployment, Plaintiff Case was restored as a Deputy Sheriff Trainee. Moreover, Defendant required Plaintiff Case to go through Street Training Evaluation Program (STEP), which is designed to train new deputies in the agency. Plaintiff Case was not a new hire, nor was he a previous deputy of Defendant.

45.     Additionally, Defendant took approximately 388 hours of vacation away from Plaintiff Case while Plaintiff Case was on military leave from 2011 to 2013.

46.     In 2012, Plaintiff Case spoke with Lance Fulse (Human Resources) and questioned why his name was taken off of promotional eligibility lists during his military activations. Plaintiff Case was advised that he was still eligible for promotion and that his

name would be placed back on the list upon his "actual return" to Defendant.

47.    On February 4, 2013, Fulse informed Plaintiff Case that he would be eligible for promotion once her reported back from active duty.  Fulse also stated that Plaintiff Case's name would be placed back on the list, but he would have to retake the promotional exam.

48.    In approximately 2012 or 2013, Defendant enacted a General Order that prevented employees who were not actively working for the department (including military leave) from accruing vacation, sick, or holiday time.

49.    On December 16, 2013, Plaintiff met with Major Paul Baggett.  During the meeting Major Baggett and Plaintiff Case discussed Plaintiff's military service and Defendant's promotional process.  Major Baggett discussed making rounds and told Plaintiff Case that he was not being promoted because "no one knows you" and noted that Plaintiff Case was "out of sight, out of mind."

50.    On April 17, 2014, Plaintiff Case met with Major Joe Halman.  During the meeting, Major Halman told Plaintiff Case that Sergeants are the "backbone" of Defendant and are responsible for "motivating" their "troops."  In discussing a promotion to Sergeant with Plaintiff, Major Halman stated that Plaintiff Case "need[s] to be here for your troops" and asked: "how can you lead if you're not here."

51.    On April 23, 2014, Plaintiff Case met with Andria McDonald (Executive Director, Department of Administration).  During the meeting, McDonald confirmed to Plaintiff Case that attendance and "excessive leave time" were looked at by Defendant when making promotional decisions.

52.    On April 23, 2014, Plaintiff also met with William Jasper ("W.J.") Martin

(Chief of Law Enforcement).  During the meeting, Chief Martin acknowledged to Plaintiff that Plaintiff Case got "forgotten" because he was gone on military leave and indicated that others in the department could feel similarly.

53.    On May 28, 2014, Plaintiff Case met with Captain Oakman.  During the meeting, Captain Oakman told Plaintiff Case that it was "hard" to promote Plaintiff Case while he was on military leave.  Additionally, Captain Oakman told Plaintiff that there were "advantages" to being there and that Plaintiff Case not being present for Defendant "presents challenges" when it came to Plaintiff Case being promoted.

54.    On August 14, 2014, Sergeant Bob Barnes asked Captain Ian Floyd if he would support Plaintiff Case for a promotion to Sergeant.  In response, Captain Floyd asked how long Plaintiff Case had been back from military leave.

55.    On October 7, 2014, Plaintiff met with Steve Lester (Chief of Staff).  During the meeting, Plaintiff Case's military service and promotions were discussed at length.  For example:

   a.    Chief Lester asked Plaintiff Case if he was "full-time military" or if Plaintiff Case considered Defendant his full-time job;

   b.    Chief Lester asked Plaintiff Case how long he was going to stay in the military;

   c.    Chief Lester questioned the perception that Plaintiff Case was giving "more focus" to his "part-time job";

   d.    Chief Lester stated that Defendant needed someone who was there for the job and noted that, if promoted, people would think: "frickin' guy is not here";

   e.    Chief Lester asked Plaintiff Case: "are you 200% committed to be a deputy sheriff?"  Plaintiff Case responded: "I'd do a damn good job for you, sir," to which Chief Lester responded: "when you were here";

      f.      Chief Lester asked Plaintiff Case who would do his job when he was not there;

      g.      Chief Lester asked Plaintiff Case if the United States government was going to send money to Defendant to promote Plaintiff Case while he was gone on military leave;

      h.      Chief Lester asked Plaintiff Case if he would be promoted in the military if he was not around;

56.     On October 7, 2014, met with Captain Floyd.  During the discussion, Captain Floyd and Plaintiff Case discuss another veteran, Craig Powers, who was promoted.  Captain Floyd confirmed to Plaintiff Case that Powers would not have been promoted if he was on a military deployment.  In fact, Captain Floyd himself was promoted after his Florida Army National Guard service concluded.

57.     By not promoting Plaintiff Case and not applying the mandated veterans' preference, Defendant negatively impacted Plaintiff Case's pay, seniority, and benefits, including Plaintiff Case's pension.

### FACTUAL ALLEGATIONS
### (Plaintiff Clyde Nichols, Jr.)

58.     Plaintiff Nichols served in both the United States Navy and the United States Army.  From approximately June 1986 to September 1992, Plaintiff served in the Army National Guard as Staff Sergeant E-6.  In August 1992, Plaintiff was deployed for approximately six (6) weeks due to Hurricane Andrew and was later honorably discharged from service.

59.     Plaintiff Nichols was employed by Defendant from approximately November 9, 1981 to May 19, 2005.  During his employment with Defendant, Plaintiff Nichols

consistently received commendations and recognitions from Defendant for his work.

60.     Between June 1986 and August 1992, Plaintiff Nichols was eligible for promotion, but was passed over each time that a promotional opportunity was available.

61.     For example, in 1992, Plaintiff Nichols achieved a perfect score on Defendant's promotional exam (plus bonus points for his essay), but was not chosen for promotion.

62.     After Plaintiff Nichols was honorably discharged from the military, Defendant promoted him to Sergeant.

63.     By delaying the promotion of Plaintiff Nichols and not applying the mandated veterans' preference, Defendant negatively impacted Plaintiff Nichols' pay, seniority, and benefits, including Plaintiff Nichols' pension.

## CLASS ACTION ALLEGATIONS

64.     Plaintiffs, CONRAD CASE and CLYDE NICHOLS, reallege and incorporate paragraphs one (1) through sixty-three (63) as though set forth fully herein.

65.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Rule 23, Federal Rules of Civil Procedure ("Rule 23").  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

66.     Pursuant to Rule 23, Federal Rules of Civil Procedure, Plaintiffs bring this case as a class action on behalf of all former and current employees of Defendant who are or have been:

(a)     members of the uniformed services as defined by USERRA during their employment with Defendant; and

(b)     denied promotions due to their membership in the uniformed services.

67.     Pursuant to Rule 23, Federal Rules of Civil Procedure, Plaintiffs also bring this case as a class action on behalf of all former and current employees of Defendant who are or have been:

(a)     eligible to receive a veteran preference pursuant to Section 295, *Florida Statutes*, with respect to promotions; and

(b)     on one or more occasion did not receive such veteran preference related to such promotions.

68.     This action if properly maintainable as a class action because the requirements of Federal Rules of Civil Procedure 23(a), Rule 23(b)(1), (2), and (3) are met as follows:

69.     **Numerosity/Impracticability of Joinder**.   The Class is so numerous that joinder of all members is impracticable.   Upon information and belief, the Class has more than 500 members, thus joinder of those class members would be difficult, inconvenient, and inefficient.   Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court by resolving the issues concerning Defendant's violations of USERRA in one forum, thus preserving judicial economy.

70.     **Commonality**.   Defendant engaged in a common course of conduct toward Plaintiffs and members of the Class by (1) denying members of the uniformed services promotions due to their membership in the uniformed services and (2) denying them the veteran preference to which they are entitled pursuant to Florida Statutes.   There are questions of law and fact common to Plaintiffs and members of the Class.   These common questions of law and fact include, but are not limited to, the following:

(a)     Whether Defendant violated 38 U.S.C. § 4311 by systematically denying members of the uniformed services promotions due to their membership in the uniformed services;

     (b)     Whether Defendant violated 38 U.S.C. §§ 4311 and 4316 by failing to provide a veterans' preference in promotions to eligible employees as mandated by Section 295, *Florida Statutes*;

     (c)     Whether Defendant treated military-related absences as continued employment, consistent with 38 U.S.C. § 4316(a) and 20 C.F.R. § 1002.210;

     (d)     How Defendant's violations of USERRA impacted members of the proposed Class, including the loss of seniority, pay, and benefits, including reduced pension benefits;

     (e)     Whether Plaintiffs are entitled to back pay, front pay, interest, liquidated damages, declaratory relief, injunctive relief, and attorneys' fees and costs for Defendant's violations of the law.

80.     The above-referenced legal and factual questions related to all of the class members and those legal questions are substantially related to resolving this litigation. Stated differently, Defendant's course of conduct in violating USERRA affects all class members and the elements of the aforementioned causes of action are shared by all class members.

81.     Plaintiffs' contentions are capable of classwide resolution, such that the determination of the truth or falsity of the claims will revolve around an issue that is central to the validity of each one of the claims in one stroke. Whether Defendant violated USERRA by (1) denying members of the uniformed services promotions due to their membership in the uniformed services and (2) refusing to follow Florida's veteran preference law are common questions and the answers will be the same for every class member. In other words, answers to these questions will determine, in "one stroke," which side will win the case.

82.     **Typicality**. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs' claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories. Specifically, Plaintiffs, like

the class members, were denied promotions due to their membership in the uniformed services and were denied a veteran's preference as mandated by Florida law. The Plaintiffs, like the class members, have been damaged by Defendant's USERRA violations in their pay, seniority, and benefits, including their pensions.

83.     The relief sought is typical and outlined in the Prayer for Relief below.

84.     **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs understand the issues in this case and are committed to vigorously pursuing this claim on behalf of the Class. Plaintiffs have suffered the damages alleged and have no interests antagonistic to the interest of any other Class members.

85.     Plaintiffs have retained competent and capable legal counsel with experience in class action litigation, including USERRA claims and related class and collective action litigation. Plaintiffs and counsel are committed to prosecuting this action vigorously on behalf of the Class, and neither have interests that are contrary to, or that conflict with, those of the proposed Class.

86.     Defendant has no unique defenses against Plaintiffs that would interfere with Plaintiffs' representation of the Class.

87.     **FRCP 23(b)(1)**. This action is properly maintainable as a class action under Rule 23(b)(1), Federal Rules of Civil Procedure, because the prosecution of separate actions by, or against, members of the class would create a risk of inconsistent adjudications regarding individual class members that would establish incompatible standards of conduct for Defendant, the party opposing the class. Thus, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

88.    Additionally, prosecuting separate actions by individual members of the Class would create the risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.  Moreover, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  A Class action presents far few management difficulties and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

89.    The central questions in this litigation are whether: (1) Defendant denied promotions to members of the uniformed services due to their membership in the uniformed services and (2) Defendant denied eligible veterans a veteran preference in promotions as mandated by Florida law.

90.    **FRCP 23(b)(2)**.  This action is also properly maintainable as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure.

91.    Defendant is alleged to have violated USERRA and acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis.  Defendant has maintained a uniform practice of violating USERRA in its promotional decisions and applying veteran preference and have applied that practice to all members of the Class.  As such, Defendant has acted or refused to act on grounds that apply generally to the Class.

92.    The monetary relief Plaintiffs seek either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.  Specifically, the losses to

the Class can be calculated by: (1) comparing the wages that would have been earned if the Class Member would have been promoted with the wages actually earned by the Class Member, (2) comparing the amounts contributed to the Class Members' pensions with the amounts that would have been contributed had the Class Members been promoted and received higher pay; (3) comparing any additional value of benefits received if Class Members were promoted; and (4) a simple doubling of back pay and benefits if Defendant is found liable for liquidated damages.

93.     **FRCP 23(b)(3).**  This action is also properly maintainable as a class action under FRCP 23(b)(3).  The questions of law and fact common to all members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

94.     Defendant engaged in a common course of conduct toward Plaintiffs and members of the Class.  The common issues arising from this conduct that affect Plaintiffs and members of the Class predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.  By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether Defendant violated his or her rights under USERRA and whether a remedy should be provided under USERRA.  Moreover, by resolving the dominant, central, and overriding issues as to whether Defendant has violated the Class members' USERRA rights, Defendant will not have to face multiple claims related to the issue.

95.     A class action is the superior method for the fair and efficient adjudication of

this controversy.  Class-wide adjudication is a superior manner of compelling Defendant to comply with the benefits of employment afforded to Plaintiffs and members of the Class by virtue of their service in the uniformed services and honorable discharged veteran status.  The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendant is small, as the denial of promotions and application of veteran preference is a common problem that that affects all members of the uniformed services and veteran employees and a common resolution of Defendant's violations of the law will result in far greater certainty for Defendant's active duty and veteran employees.

96.    Management of these claims in a Class is likely to present significantly fewer difficulties than are presented in many individual class claims because the relief requires uniform treatment between prevailing Plaintiffs.  Class treatment is superior to multiple individual lawsuits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

97.    Upon information and belief, there is no other existing lawsuit instituted by members of the Class raising these allegations prior to the time that this Complaint is filed.

**COUNT I**
**DISCRIMINATION IN VIOLATION OF THE**
**UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT ACT**

98.    Plaintiffs, CONRAD CASE and CLYDE NICHOLS, reallege and incorporate paragraphs one (1) through ninety-seven (97) as though set forth fully herein.

99.    At all times material hereto, Defendant failed to comply with 38 U.S.C. § 4311.

Specifically, the above-described acts constitute intentional discrimination pursuant to USERRA.

100.    USERRA prohibits discrimination against persons who serve in the uniformed services.  Specifically, "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a).

101.    Defendant violated the express mandate and purpose of USERRA with regard to Plaintiffs and class members by denying Plaintiffs and class members promotions based on their service in the uniformed services.

102.    Plaintiffs, and each class member served in the uniformed services of the United States and is a veteran entitled to a veteran preference under Chapter 295, *Florida Statutes*. Defendant took adverse employment actions against Plaintiffs and each class member by (1) denying the members of the uniformed services promotions due to their membership in the uniformed services and (2) failing to provide eligible veterans with Florida's mandated veteran preference in promotions.  These are benefits of employment as defined in 38 U.S.C. § 4303(2).

103.    Plaintiffs' and the class members protected military status was a motivating and substantial factor in the decision by Defendant to refuse to follow the law and deny Plaintiffs (1) promotions due to their membership in the uniformed services and (2) veteran preference in promotions as mandated by Florida statute.

104.    Defendant's violations of 38 U.S.C. § 4311 was willful within the meaning of 38 U.S.C. § 4323(d)(1)(C).

WHEREFORE, Plaintiffs pray for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Liquidated damages;

    e.    Attorneys' fees and costs; and

    f.    Injunctive and declaratory relief;

    f.    For any other relief this Court deems just and equitable.

<u>**COUNT II**</u>
<u>**DENIAL OF BENEFITS OF EMPLOYMENT IN VIOLATION OF THE**</u>
<u>**UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT ACT**</u>

105.    Plaintiffs, CONRAD CASE and CLYDE NICHOLS, reallege and incorporate paragraphs one (1) through ninety-seven (97) as though set forth fully herein.

106.    A person who is reemployed under USERRA is "entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed. 38 U.S.C. §4316.

107.    During a period of service in the uniformed services, an employee is deemed to be on furlough or leave of absence and is therefore entitled to the non-seniority rights and benefits generally provided by the employer to other employees with similar seniority, status,

and pay that are on furlough or leave of absence. 38 U.S.C. §4316; 20 C.F.R. §1002.149.

108.    Accrual of vacation leave is considered to be a non-seniority benefit that must be provided by an employer to an employee on a military leave of absence only if the employer provides that benefit to similarly-situated employees on comparable leaves of absence. 20 C.F.R. §1002.150.

109.    An employer may not require an employee to use accrued vacation, annual, or similar leave during a period of service in the uniformed services. 20 C.F.R. §1002.153.

110.    Employees are entitled to the seniority and seniority-based rights and benefits that he or she had on the date the uniformed service began, plus any seniority or seniority-based rights and benefits that the employee would have attained if he or she had remained continuously employed.  20 C.F.R. §1002.210.  The period of absence from employment due to or necessitated by uniformed service is not considered a break in employment. *Id*.

111.    Rule 60L-34.0041(4)(a), Florida Administrative Code provides: "At the close of business on December 31 of each calendar year, a career service employee's annual leave balance in excess of 240 hours shall be transferred to sick leave on an hour-for-hour basis." Defendant failed to follow regulation with regard to Plaintiffs.

112.    Defendant did not apply Florida's veteran preference to Plaintiffs Case and Nichols when they applied for promotions.

113.    Defendant did not treat Plaintiffs' military-related absence from work as continuous employment, which violates 38 U.S.C. § 4316(a) and 20 C.F.R. § 1002.210.

114.    Defendant's violations of 38 U.S.C. § 4316 were willful within the meaning of 38 U.S.C. § 4323(d)(1)(C).

WHEREFORE, Plaintiffs pray for the following damages against Defendant:

    a.      Back pay and benefits;

    b.      Prejudgment interest on back pay and benefits;

    c.      Front pay and benefits;

    d.      Liquidated damages;

    e.      Attorneys' fees and costs; and

    f.      Injunctive and declaratory relief;

    f.      For any other relief this Court deems just and equitable.

## PRAYER FOR RELIEF

115.    Plaintiffs, on behalf of themselves and on behalf of the Class Members, pray for judgment against Defendant as follows:

    a.      Certification of the proposed Class;

    b.      Appointment of the named Plaintiffs as Class Representatives;

    c.      Appointment of the undersigned as Class Counsel;

    d.      An award to Plaintiffs and the Class of (1) back pay, (2) front pay, (3) lost benefits of employment, (4) pre-judgment interest, (5) post-judgment interest, (6) liquidated damages, (7) attorneys' fees, costs, and expenses as allowed by law, including 38 U.S.C. § 4323(d); and

    e.      For other further equitable, injunctive, and declaratory relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

116.    Plaintiffs, CONRAD CASE and CLYDE NICHOLS, on behalf of themselves

and others similarly situated, demand a trial by jury on all issues so triable.

**DATED** this 11th day of March 2019.

**FLORIN GRAY BOUZAS OWENS, LLC.**

s/ *Gregory A. Owens*_____
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**CHRISTOPHER GRAY, ESQUIRE**
Florida Bar No.: 902004
chris@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)