## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CONRAD CASE, on behalf of himself and
all others similarly situated,**

     **Plaintiffs,**

**v.**

                                      **CASE NO.:  8:19-cv-00607**

**GRADY JUDD, in his official capacity as
Polk County Sheriff,**

     **Defendant.**

_____/

## DEFENDANT'S BRIEF IN RESPONSE TO THIS COURT'S OCTOBER 8
## ORDER REGARDING JURISDICTION

Defendant Grady Judd, by and through his undersigned attorneys, submits this brief regarding the Court's jurisdiction in response to Docket 46.  At issue is whether Judd is a "State" employer, a "private employer," or a different type of governmental officer not explicitly covered by USERRA.  As noted in Docket 46, "federal courts are courts of limited jurisdiction" and, as a result, "must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  This obligation is particularly important, given that purported judgments issued without appropriate subject-matter jurisdiction are void and subject to attacks even years after they were rendered.  *See Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1130–31 (11th Cir. 1994) (collecting cases); *see also Latin Am.*

6082744v.1

*Prop. & Cas. Ins. Co. v. Hi-Lift Marina, Inc.*, 887 F.2d 1477, 1479 (11th Cir. 1989) ("Subject-matter jurisdiction can never be waived.").[1]

Although USERRA clarifies that a "political subdivision" of a state is a "private employer" for jurisdictional purposes, § 4323(i), it never defines the phrase "political subdivision." A Florida sheriff like Judd is a natural person and an independent constitutional officer that does not fit neatly into the categories of "State" or "political subdivision" as those terms are commonly used both in ordinary usage and case law. Given that USERRA does not explicitly speak to these types of independent governmental employers, and federal district courts only have the authority to hear cases over which Congress grants them jurisdiction, an appropriate outcome would be to enable state courts of general jurisdiction to hear these types of claims. *Cf. McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 233–34 (1934) (holding that the state courts of Alabama, as courts of general jurisdiction, could not refuse to hear cases simply because they were brought under federal law). Therefore, Judd respectfully requests an order dismissing this lawsuit for lack of subject-matter jurisdiction.

## I.      The interpretation of 38 U.S.C. § 4323 controls this jurisdictional analysis.

As a starting point, the answer of whether Congress granted jurisdiction to federal courts to hear lawsuits like this one turns on the interpretation of USERRA itself, rather than the general jurisdictional provision of 28 U.S.C. § 1331. USERRA contains an explicit jurisdictional provision 38 U.S.C. § 4323(b), which defines three types of jurisdiction:

1. Federal courts have exclusive jurisdiction to hear actions brought by the United States against "State" employers. § 4323(b)(1).

---

[1]    The dangers associated with litigating a case in an improper forum are particularly acute in this lawsuit, given that Plaintiff Conrad Case purports to bring a class action. The jurisdictional analysis

2. State courts have exclusive jurisdiction to hear actions brought by private litigants against "State" employers. § 4323(b)(2); *see Wood v. Fla. Atl. Univ. Bd. of Trs.*, 432 F. App'x 812, 815 (11th Cir. 2011) (agreeing with other circuits that the language of paragraph (b)(2) vests exclusive jurisdiction with state courts).

3. Federal courts have exclusive jurisdiction to hear actions brought by private litigants against "private employer[s]." § 4323(b)(3). The term "private employer" is defined for purposes of section 4323 to "include[] a political subdivision of a State."

Although 28 U.S.C. § 1331 broadly confers "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," a canon of statutory construction used by courts, including the Supreme Court, is that a specific statute controls over a general one. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."). When Congress enacted USERRA, it chose to explicitly address the topic of jurisdiction. As a result, the provisions of USERRA control.[2]

---

[2] This conclusion is bolstered by the courts' treatment of private rights of action general. As an analogous matter, courts tend to apply a rule under which "[w]hen Congress has not explicitly provided a private right of action . . . , 'the presumption [is] that Congress did not intend one.'" *Platsky v. Lazar*, No. 15-cv-02454, 2015 WL 9694518, at *2 (S.D.N.Y. Nov. 30, 2015) (quoting *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007)). Applying that reasoning to a situation such as this one, even where Congress has created a limited private right of action like it did in USERRA, courts should be cautious about broadly expanding that right of action to areas not covered explicitly in the statute.

6082744v.1

## II.    Judd is neither the State of Florida nor a "political subdivision"; he is a natural person and independent constitutional officer.

The confusion in this case results from Congress's failure to define "political subdivision" in USERRA and the fact that Judd does not neatly fit into the possible categories in USERRA's jurisdictional statute.    As explained above, Congress drafted USERRA to explicitly cover jurisdictional matters, and USERRA's jurisdictional provisions cover three types of situations:

1.  Claims by the United States against State employers, § 4323(b)(1);

2.  Claims by private litigants against State employers, § 4323(b)(2); and

3.  Claims by private litigants against "private employer[s]," including "political subdivision[s] of" states, § 4323(b)(3), (i).

But because Congress chose to cover those three express situations, the effect is that USERRA has a void with respect to claims against people (whether natural persons or entities) that do not fit into those specially defined categories.  *Cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8 (2000) (rejecting the theory "that the expression of one thing indicates the inclusion of others unless exclusion is made explicit").

In this case, the Florida Constitution clarifies that Judd is not a "political subdivision." Under the Florida Constitution, the only "political subdivisions" are "counties."  FLA. CONST. art. VIII, § 1(a).  Sheriffs such as Judd are separately created to be separate, independent governmental actors.  *Id.* at § 1(d).  As a result, counties have no authority to abolish the office of the sheriff, transfer his or her duties, change the term of office, or establish any manner of selecting the sheriff other than by elections.  *Id.*[3]  At most, sheriffs like Judd might be deemed to be officers of political subdivisions, rather than political subdivisions themselves.  Therefore, to the extent it

---

[3]     Although the heading of Article VIII, Section 1(d) is "County officers," that heading conflicts with the

applies, Florida's own law appears to counsel against finding that sheriffs are "political subdivisions."

Similarly, the ordinary meaning of the phrase "political subdivision" implies something other than a natural person like Judd. Instead, it implies a metaphysical entity like a city, or a county, or a board of some type. It is "a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (quoting *Wis. Cent. Ltd. v. U.S.*, 138 S. Ct. 2067, 2074 (2018)). The traditional definition of "political subdivision" reflected in other sources is "[a] division of a state that exists primarily to discharge some function of local government." *Political Subdivision*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Nw. Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 206 (2009) (adopting the quoted definition of "political subdivision" from BLACK'S LAW DICTIONARY as being "the ordinary sense of the term" and finding that a municipal utility district was a political subdivision). Judd has been unable to find any case law purporting to say that a natural person like himself, even when operating as a state actor, becomes a "division" or a "subdivision." Rather, the ordinary reading of the term would seem to be harmonious with the Florida Constitution, which is that Judd is merely an "officer" of a political subdivision at most, and more likely an independent political actor who operates outside the confines of that political subdivision under Article VIII, Section 1(d).[4]

Although it ultimately was able to avoid deciding the issue, the Sixth Circuit and retired Supreme Court Justice Sandra Day O'Connor sitting by designation described some of these

---

[4]   To use an analogy, a governmental "subdivision" sounds more like a corporation, whereas somebody like Judd is more akin to a sole proprietorship. Although the sole proprietorship might take certain actions and operate under a certain name, it is still one and the same with its owner, a natural person. It does not become a separate entity in the sense that a corporation, LLC, or even a partnership does.

problems in *Demings v. Nationwide Life Ins. Co.*, 593 F.3d 486 (6th Cir. 2010).  The court in that case was deciding a securities fraud case brought by a Florida sheriff and the applicability of the Securities Litigation Uniform Standards Act of 1998 (SLUSA).  *Id.* at 488.  Much like USERRA, SLUSA contains express language about "political subdivisions" without defining the term.  15 U.S.C. § 77p(d)(2)(A) ("[N]othing in this section may be construed to preclude a State or political subdivision thereof . . . from bringing an action involving a covered security on its own behalf . . . .").  In a section under the heading "Sheriff Demings is not a state[ or] political subidision thereof," the Sixth Circuit noted the confusion caused by Congress's failure to define "political subdivision."  *Demings*, 593 F.3d at 491–92.  It also noted at least in passing that calling a natural person like a sheriff a "political subdivision" is a "strain."  *See id.* at 492.  In end, however, the court was able to avoid the issue because the sheriff in question never even purported to sue "as a political subdivision 'on its own behalf.'"  *Id.* at 492.  Nevertheless, the *Demings* decision illustrates the complexity that this type of incomplete statutory drafting causes.  Rather than attempting to encompass him as a political subdivision, Judd requests an order finding that the phrase "political subdivision" be read to include governmental entities like cities and not natural persons who operate in an independent capacity.[5]

### III.   Cases regarding the applicability of Eleventh Amendment immunity are distinguishable, as they involve a binary choice between "State" and "not state."

The bulk of Plaintiff Conrad Case's argument in favor of this court retaining jurisdiction depends on how courts in the Eleventh Circuit have addressed the application of Eleventh Amendment immunity to sheriffs' offices.  *See* Docket 51, at 3–6.  Although these cases would directly control the outcome of this litigation if this were an Eleventh Amendment case, they are

---

[5]   As described below, all the opinions cited by Case support this reading, as each involved courts analyzing whether metaphystical entities like cities were "political subdivisions."  And as explained above in footnote 2, this conclusion is supported by the courts' general treatment of private rights of action.

less helpful with respect to interpreting the specific language of USERRA.  In every lawsuit in which the Eleventh Amendment becomes an issue, the defendant—usually some branch or municipality of a state—attempts to claim entitlement to immunity from suit in a federal forum. But as the Supreme Court noted in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, the Eleventh "Amendment is only available to 'one of the United States.'"  440 U.S. 391, 400 (1979).  Therefore, courts have created the factor test applied by Case to answer the binary question of whether an entity is or is not "the State."  As a result, those factors might be helpful in drawing an analogy if the question here were simply whether Judd is a "State" employer for purposes of section 4323(b)(2).[6]

But the question here is not whether Judd simply is or is not the State of Florida.  Rather, as described above, USERRA's jurisdictional provisions cover only three classes of employers:

1. State employers;

2. Private employers; and

3. "[P]olitical subdivision[s]" of states that are deemed under section 4323(i) to be "private employer[s]."

If Judd is not one of those three classes of employers, then he falls outside the provisions of USERRA's explicit jurisdictional provisions and his claim is appropriate in a state court of general jurisdiction.  *See infra* Section IV.  The Eleventh Amendment cases never address what features make something a "political subdivision."  So although they might be interpreted help us conclude that Case likely is not the State of Florida in this capacity, such as under section 4323(b)(1), they do not help with any finding of whether he fits into the undefined phrase "political subdivision" found in section 4323(i).

---

[6]    As Case correctly notes, those factors weigh against finding that Judd is the "State" itself.

Similarly, the decisions from the district courts of Alabama cited by Case do not help with the "political subdivision" definition with respect to independent constitutional officers like Judd. *See* Docket 51, at 2. *Weaver v. Madison City Board of Education* involved a lawsuit against a board of education created and operated by the city of Madison. 947 F. Supp. 2d 1308 (N.D. Ala. 2013). The defendant attempted to argue that it was an "arm of the state" under the traditional Eleventh Amendment immunity test. *Id.* at 1310. The defendant never attempted to argue that it was not a political subdivision, and the court does not appear to have considered the issue. Rather, the court noted (probably correctly) in a single sentence that entities "such as counties and municipal corporations" are political subdivisions. *Id.*; *see also supra* Section II (explaining that the appropriate interpretation of "political subdivision" includes only metaphysical entities that are created by dividing the state itself). The thrust of the court's opinion was that the city board of education could not claim Eleventh Amendment immunity.

Similarly, *Harris v. City of Montgomery* involved a lawsuit against the city of Montgomery itself. 322 F. Supp. 2d 1319 (M.D. Ala. 2004). Again, the court did not expressly consider USERRA's treatment of independent constitutional officers of any sort, but rather the treatment of governmental entities like cities. The defendant does not appear to have argued that it was not a "political subdivision" within the meaning of section 4323(i), and the court did not consider the issue. *See id.* at 1326. The opinions from other jurisdictions cited by Case likewise concern governmental entities like cities, rather than independent officers who are natural persons, being potentially subject to USERRA as political subdivisions. *See* Docket 51, at 2–3.

Finally, Case's citation to *Loperena v. Scott* as being an example of an "Eleventh Circuit court[] . . . presid[ing] over USERRA claims against sheriffs" is not controlling. *Id.* at 3. Neither that Eleventh Circuit opinion nor the underlying district court opinion seems to have analyzed

whether USERRA afforded subject-matter jurisdiction over the claim.  *See generally Loperena v. Scott*, 356 F. App'x 240 (11th Cir. 2009); *Loperena v. Scott*, No. 2:08-cv-00099, 2009 WL 1066253 (M.D. Fla. Apr. 21, 2009).[7]  The fact that these decisions did not address the issue does not mean that USERRA implicitly confers this type of jurisdiction; rather, they are indicative of the fact that USERRA is a complicated federal statute, and courts and litigants occasionally miss important issues.  This lawsuit affords an opportunity to address this important question.

IV.    **Given USERRA's silence regarding independent constitutional officers, the appropriate outcome is for Case to submit his lawsuit in a state court of general jurisdiction.**

        Lastly, it is worth noting that Congress's failure to address all contingencies in USERRA does not act as an unfair bar against these types of claims in federal district court.  Rather, it only prohibits plaintiffs from filing in that particular type of forum, but they can continue filing in jurisdictions such as state courts of general jurisdiction.  For at least eighty years, the Supreme Court has recognized that state courts of general jurisdiction cannot prohibit the enforcement of federal laws.  *McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 233–34 (1934).  Of course, Congress can choose to give exclusive jurisdiction over certain types of claims to lower federal courts, just as it could have chosen to give any jurisdiction over these types of novel USERRA claims to federal district courts.  *See Cary v. Curtis*, 44 U.S. (3 How.) 236, 245 (1845) ("Congress . . . possess[es] the sole power of creating the tribunals [inferior to the Supreme Court] for the exercise of the judicial power, and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.").  But given Congress's silence

---

[7]    Likewise, neither of these opinions purported to address whether a Florida sheriff is a "political subdivision."

regarding the definition of "political subdivision," the appropriate outcome is for Case to bring his lawsuit, if at all, in Florida's courts of general jurisdiction.

## V.      Conclusion

For the reasons described in this motion, Judd requests an order dismissing this lawsuit for lack of subject matter jurisdiction.

Respectfully submitted,

/s/      *Phillip J. Harris*
**PHILLIP J. HARRIS,** FBN:  0044107
pharris@constangy.com
**GREGG M. MORAN,** FBN:  1011060
gmoran@constangy.com
**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida  33601-1840
Telephone:     (813) 223-7166
Facsimile      (813) 223-2515
Service Email:       tampa@constangy.com
***Attorneys for Defendant***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 21st day of October 2019, I electronically filed the

foregoing with the Clerk of Court by using the Federal CM/ECF filing system, which will send a

Notice of Electronic Filing, along with a true and correct copy of the foregoing via e-mail to the

following:

> Gregory A. Owens, Esq.
> greg@fgbolaw.com
> Christopher Gray, Esq.
> chris@fgbolaw.com
> FLORIN GRAY BOUZAS OWENS, LLC
> 16524 Pointe Village Drive, Suite 100
> Lutz, FL  33558
> Telephone:      (727) 254-5255
> Facsimile:      (727) 483-7942
> *Counsel for Plaintiff*

> /s/      *Phillip J. Harris*
> **Attorney for Defendant**

6082744v.1