UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONRAD CASE, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                          Case No.: 8:19-cv-607-T-33TGW

GRADY JUDD, in his official
capacity as Polk County Sheriff,

      Defendant.
_____/

**ORDER**

This matter comes before the Court on consideration of Plaintiff Conrad Case's Motion for Class Certification (Doc. # 55) filed on November 4, 2019. Defendant Grady Judd, in his official capacity as Polk County Sheriff, filed a response in opposition (Doc. # 64) on November 22, 2019. Upon due consideration and for the reasons set forth below, the Motion for Class Certification (Doc. # 55) is denied.

**I.    Background**

Case initiated this putative class action on March 11, 2019. (Doc. # 1). Before Judd responded, Case filed an amended complaint (Doc. # 5), which Judd moved to dismiss. (Doc. # 20). With leave of court, Case filed a second amended complaint on May 15, 2019, alleging claims due to Judd's

violations of the Uniformed Services Employment and Reemployment Act, 38 U.S.C. §§ 4301, *et seq.* (USERRA) (Doc. # 26). Case seeks relief on behalf of himself and a proposed class that includes current and former employees of the Polk County Sheriff's Office with military backgrounds who were passed over for promotions due to their membership in the uniformed services. (Id. at ¶ 59). In Count I, Case alleges Judd violated the USERRA by (1) denying him and other class members promotions due to their military service, and (2) by denying veteran preferences under Florida Statutes, Chapter 295. (Id. at ¶¶ 85–86). In Count II, Case alleges Judd discriminated against him in violation of 38 U.S.C. § 4316 by not counting periods of military leave toward continuous service with the Sheriff's Office.[1] (Id. at ¶ 97).

---

[1] Case does not incorporate the class allegations into Count II and thus, appears to seek remedy in that count only on his own behalf. See (Doc. # 26 at ¶¶ 89–98). Although Case's Motion for Class Certification attempts to frame the class certification issue to include "Defendant's failure to treat their military-related absence as continuous employment as required by USERRA," see (Doc. # 55 at 2), that alleged violation is the subject of Count II, which is not asserted on behalf of the class. Additionally, the class definition includes those individuals denied certain promotions, but does not reference individuals affected by a failure to properly calculate continuous employment due to periods of military leave.

Judd filed a motion for judgment on the pleadings directed to Count I, arguing no private cause of action exists for a purported failure to give veteran preferences under Florida law or the USERRA. (Doc. # 36). On October 23, 2019, this Court granted Judd's motion in part, finding that veteran's preference policies set forth in Florida Statute § 295.09(1)(a) are not "benefits of employment" under USERRA. (Doc. # 53). In so ruling, this Court entered judgment in Judd's favor on Count I to the extent that the claims in Count I are predicated on Judd's alleged failure to apply Florida's veteran's preference in promotional decisions. (<u>Id.</u> at 11).

Case filed the instant Motion on November 4, 2019, (Doc. # 55), and Judd has responded. (Doc. # 64). With leave of court, both sides filed documents under seal containing personal identifying information of individuals not party to this suit. (Docs. # 60, 66). The Motion is now ripe for review.

## II.  **<u>Legal Standard</u>**

A district court has broad discretion in determining whether to certify a class. <u>Washington v. Brown & Williamson Tobacco Corp.</u>, 959 F.2d 1566, 1569 (11th Cir. 1992); <u>Griffin v. Carlin</u>, 755 F.2d 1516, 1531 (11th Cir. 1985). As explained in <u>Valley Drug Co. v. Geneva Pharmaceuticals, Inc.</u>, 350 F.3d

1181, 1187 (11th Cir. 2003), Federal Rule of Civil Procedure 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate."

Under Rule 23(a), a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The burden of proof to establish the propriety of class certification rests with the advocate of the class, and failure to establish any one of the four Rule 23(a) factors and at least one of the alternative requirements of Rule 23(b) precludes class certification. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14(1997).

This Court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug Co., 350 F.3d at 1188, n. 15.

## III. **USERRA**

Under USERRA,

A person who is a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). "Congress enacted USERRA 'to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service' and 'to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers.'" Dees v. Hyundai Motor Mfg. Ala., LLC, 368 F. App'x 49, 50 (11th Cir. 2010) (quoting 38 U.S.C. § 4301(a)(1)-(2)).

Case contends uniformed service members were not provided equal opportunity for promotions because a candidate for promotion had to "make rounds" and meet with members of the chain-of-command, which he claims service members were unable to do due to absences related to military service. (Doc. # 26 at ¶ 21). Case submits this policy discriminated against service members in violation of the USERRA, and he

seeks relief on behalf of himself and others similarly situated.

## IV. **Analysis**

Case seeks certification of a class of individuals of veterans and active military members who were passed over for promotions in violation of the USERRA while employed with the Polk County Sheriff's Office. Class certification is governed by Rule 23. Rule 23 implicitly requires that the proposed class is "adequately defined and clearly ascertainable." Carriuolo v. Gen. Motors Co., 823 F.3d 977, 984 (11th Cir. 2016) (citation omitted). "Establishing an early definition of the class serves two functions: (1) it enables the court to determine whether the case is suitable for certification of a class; and (2) it 'insures that those actually harmed by defendants' wrongful conduct will be recipients of the relief eventually provided.'" Buford v. H & R Block, Inc., 168 F.R.D. 340, 346 (S.D. Ga. 1996), aff'd sub nom. Jones v. H & R Block Tax Servs., 117 F.3d 1433 (11th Cir. 1997) (quoting Simer v. Rios, 661 F.2d 655, 670 (7th Cir. 1981)).

Case proposes the following class definition for certification:

> Any current or former employee of the Defendant, Polk County Sheriff, who is/was (1) a member of the uniformed services as defined by USERRA; and

(2) who was denied a promotion(s) to the position
            of Sergeant and/or Lieutenant due to their
            membership in the uniformed services.

(Doc. # 55 at 1).

     In defining a proposed class, a plaintiff must
adequately identify who its members are. Grimes v. Rave Motion
Pictures Birmingham, L.L.C., 264 F.R.D. 659, 663-664 (N.D.
Ala. 2010) ("Although not explicit in Rule 23(a) or (b),
courts have universally recognized that the first essential
ingredient to class treatment is the ascertainability of the
class. . . . Thus, the named plaintiff must define the
proposed class in a manner that adequately identifies its
members. Who, exactly, are they, and how can they be
located?"). The class members must be ascertained by
objective criteria. See Bussey v. Macon Cty. Greyhound Park,
Inc., 562 F. App'x. 782, 787 (11th Cir. 2014). And, the
process should be "administratively feasible," meaning "that
identifying class members is a manageable process that does
not require much, if any, individual inquiry." Id. at 787
(citation omitted).

     Case submits the class consists of 71 individuals —
current and former employees of the Sheriff's Office who are
or were in the military during the relevant time frame and
who were denied a promotion to Sergeant or Lieutenant. A

review of employment records and promotion eligibility lists should be able to readily identify who these individuals are and where they are located, and thus the class is ascertainable.

Judd disputes this case is appropriate for class certification and argues the proposed class lacks scope and clarity. (Doc. # 64 at 1). He claims the proposed class definition is inconsistent with Case's own allegations and the actual evidence. (Id. at 2). For example, he argues that many of the proposed class members with military obligations or veteran status regularly received promotions and several of the decision-makers are themselves members of the military.

Although the "description of the class must be sufficiently definite to enable the court to determine if a particular individual is a member of the proposed class," Pottinger v. City of Miami, 720 F. Supp. 955, 957 (S.D. Fla. 1989), the Eleventh Circuit has acknowledged that the implicit definition requirement does not require an overly strict degree of certainty and is to be liberally applied. Georgia Ass'n of Retarded Citizens v. McDaniel, 716 F.2d 1565, 1571 n. 3 (11th Cir. 1983), vacated on other grounds, 468 U.S. 1213 (1984). Given this liberal standard, the Court

concludes the proposed class is ascertainable. Whether the class meets the requirements of Rule 23 is a separate question, to which the Court now turns.

### A. **Rule 23(a) Requirements**

Once a class is adequately defined, a court must determine if the provisions of Rule 23(a) and 23(b) have been met. Under Rule 23(a), a class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. See Fed. R. Civ. P. 23(a). "Failure to establish any one of these four factors [numerosity, commonality, typicality, and adequacy of representation] and at least one of the alternative requirements of Rule 23(b) precludes class certification." Valley Drug Co., 350 F.3d at 1188.

### 1. **Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "mere allegations of numerosity are insufficient," Rule 23(a)(1)

imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013); see Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009); Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983) (explaining that the class representative is not required to establish the exact number in the proposed class). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." Manno, 289 F.R.D. at 684 (quoting Vega, 564 F.3d at 1267).

According to Case, the proposed class consists of approximately 71 individuals. (Doc. # 55 at 10). Case states he determined this number after a detailed review of Judd's promotional records. (Id.). The putative class includes current and former uniformed service members who were denied promotions due to their membership in the uniformed services. Case maintains that most of the prospective class members were passed over for multiple promotions making the overall claims "more significant" than 71.

In response, Judd argues the proposed class should not include the claims of veterans ultimately promoted as it is illogical to state their military status was a detriment during one eligibility period but not during a latter period in which they received a promotion. Judd submits that a class definition that includes veterans conflicts with Case's own allegations that the alleged discrimination discontinued once an active service member retired and became a veteran. According to Judd, under Case's allegations, the class would comprise, at most, three individual *active* service members — Craig Powers, Jennifer Harris, and Case. (Doc. # 64 at 6). And Judd represents that of the three, Case was the only one not promoted.[2] (Id.).

Clearly, three class members would fail Rule 23(a)'s numerosity requirement. While the Eleventh Circuit has indicated that having more than 40 class plaintiffs is generally enough to satisfy the numerosity requirement, see Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.

---

[2] Judd attaches to his opposition memorandum an affidavit of Polk County Sheriff employee, Lieutenant Craig Powers, who attests he had active and reservist military obligations throughout his employment with Judd and was promoted to the rank of Sergeant and thereafter Lieutenant. (Doc. #64-1 at ¶¶ 4-7). In his experience, Lt. Powers did not believe that his military status was viewed as being negative by his superior officers. (Id. at ¶ 8).

1986), it is unclear from Case's allegations if the putative class would even reach that number. Without more, Case blanketly claims to have identified 71 class members. A class action plaintiff bears the burden of proving each element of Rule 23, and mere allegations of numerosity are insufficient. Vega, 564 F.3d at 1267. The numerosity analysis is further complicated by Case's admission that of the 71 class members, only "19 of the class members were never promoted." (Doc. # 55 at 6). Nineteen class members is likely insufficient to satisfy the numerosity requirement in this Circuit. See Cox, 784 F.2d at 1553 ("[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate . . . ." (citation and internal quotation marks omitted)).

Given the disputes as to whether the class should include veterans and/or those who ultimately were promoted, it is unclear whether Case can prove the numerosity requirement has been met. Presumably, Case's argument is that although nineteen individuals were *never* promoted, the remaining 52 of the 71 service members were passed over at least once for a promotion due to their military status before ultimately receiving a promotion. And given the "generally low hurdle," Case could arguably satisfy the numerosity prerequisite. Even so, his Motion fails because he does not meet the commonality

and typicality requirements of Rule 23 as discussed below.

## 2. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality pertains to the characteristics of the group or class as a whole, unlike typicality which refers to the individual characteristics of the class representative as compared to those of the class members. Piazza v. Ebsco Indus. Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (citing Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Commonality "does not require complete identity of legal claims." Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978).[3] In fact, commonality can be satisfied even with some factual variations among class members. Armstead v. Pingree, 629 F. Supp. 273, 280 (M.D. Fla. 1986).

In Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011), the Supreme Court clarified the commonality requirement for class certification by specifically rejecting the use of generalized questions to establish commonality. Noting that

---

[3] The Eleventh Circuit, in an en banc decision, Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

"any competently crafted class complaint literally raises common questions," the Court focused the required discussion as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Id. at 350 (internal citation omitted) (emphasis in original). The Court explained that the "common contention" underpinning a finding of Rule 23(a)(2) "must be of such a nature that it is capable of class wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Case argues that the commonality requirement is satisfied here because the "overriding question is whether [Judd] violated 38 U.S.C. § 4311(a) by systematically denying members of the uniformed services promotions due to their membership in the uniformed services." (Doc. # 55 at 11). He submits that whether the class members' military service was a motivating factor in Judd's decision not to promote current and former service members to positions of Sergeant and

Lieutenant is a central issue relevant to all class members. In support of his allegations of a discriminatory animus toward service members, Case relies on several comments made by the Chief of Staff questioning him about time he spent away from his job due to military absences.

Case generally alleges that the "promotional decisions are uniformly carried out by the same group of decision-makers at the same location," but he proffers no evidence to support this statement. (Doc. # 55 at 12). To the contrary, Judd explains there is both an objective and subjective component to the promotional process. (Doc. # 64 at 9). The subjective component involves a hierarchy of decision-makers. (Id. at 10). Each department is divided into eight discrete divisions, each overseen by a Major. (Id.). The Major receives input from subordinate officers and thereafter presents the candidates to their respective department chiefs who then discuss the candidates with the executive staff. (Id.).

Judd argues that commonality is lacking because the promotional decisions at issue involved at least 125 decision-makers over the 15-year period, with at least 30 of them having some military background. In further support, he notes that those individuals are expected to testify their backgrounds and service were actually a positive factor in

the promotional process. (Doc. # 64 at 11). Notably, Judd did not become sheriff until 2005.

As observed by the Supreme Court in Wal-Mart v. Dukes, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." 544 U.S. at 355-56. Other district courts have also found that having multiple individuals involved in the process of making employment decisions defeats a commonality showing. See, e.g., Gordon v. Kaleida Health, 299 F.R.D. 380, 404 (W.D.N.Y. 2014) ("[G]iving individual supervisors discretion to apply policies in a manner best suited to their department or unit is just the opposite of a system-wide practice that would provide the commonality needed for class action."); Puffer v. Allstate Ins. Co., 255 F.R.D. 450, 461 (N.D. Ill. 2009) (noting that cases implicating "numerous, independent decision-makers" result "in the need for numerous individual inquiries").

Case also argues that a statistical analysis supports the common allegations of class-wide discrimination against military members. He cites to various years in which the promotions of military members were seemingly low. (Doc. # 55 at 5-6). However, Case's "analysis" appears, at best, random, selecting certain years, skipping others, and citing

percentages for promotions to Sergeant in one year and Lieutenant in another with no comparative data of any of the percentages to non-military members promoted during the same time frame. While Judd acknowledges that statistical analysis can support a finding of patterns or practices of discrimination, see (Doc. # 64 at 12) (citing Int'l Bhd. of Teamsters v. US., 431 U.S. 324, 339 (1977)), he demonstrates that the analysis actually supports a finding that veterans were slightly favored. (Doc. # 64 at 12–16).

Finally, Case seeks to demonstrate commonality by pointing to other alleged common issues, such as Judd's failure to treat military-related absences as continuous employment. As discussed previously, this issue is the subject of Count II, which is not asserted on behalf of the class, nor does it form the basis for the proposed class definition. Accordingly, Case fails to satisfy the commonality requirement, and his Motion is due to be denied. Moreover, no amendment to his class definition would resurrect his bid for certification because, as class plaintiff, Case fails the typicality requirement.

### 3. Typicality

The focus of Rule 23(a)(3) typicality is whether the class representative's interests are so aligned with the

17

proposed class that he may stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. Gen Tel. Co., 457 U.S. at 156; Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1322–23 (11th Cir. 2008) ("[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.").

To establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). When the class representative's injury is different from that of the rest of the class, his claim is not typical and he cannot serve as the class representative. Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Moreover, when proof of the class representative's claim would not necessarily prove the claims of the proposed class members, the class representative does not satisfy the typicality requirement. Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990). "Typicality, however, does not require identical claims or defenses." Kornberg, 741 F.2d at 1337. "A factual variation will not render a class representative's claim atypical unless the factual position

of the representative markedly differs from that of other members of the class." Id.

Case argues there is nothing to suggest his claims are atypical. (Doc. # 55 at 14). Judd disagrees, arguing Case's situation differs significantly from that of other members of the class. "The typicality requirement is met when in proving its case, the representative plaintiff establishes the element needed to prove the class members' case." Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co., 271 F.R.D. 538, 547 (S.D. Fla. 2010), aff'd, 458 F. App'x 793 (11th Cir. 2012). Here, Case claims his military absences were held against him in the promotional process. However, demonstrating that he was discriminated against because of his military absences would not prove the claims of veteran class members who had no active duty or reservist obligations.

The lack of typicality between Case and the putative class members is further evidenced by Judd's explanation of Case's time spent working for the Sheriff's Office. According to Donna Parker, the director of human resources for the Polk County Sheriff's Office, during the period from 2004 to 2019, Case worked a total of 1,232.5 hours compared to the 28,797 hours of leave (military and otherwise) he took during the same time frame. (Doc. # 66 at ¶¶ 34, 37). The net result is

4.28% of his recorded hours were spent working for the Sheriff's Office. Case did not work any hours for the Sheriff's Office in 2005, 2008, 2011, 2012, 2013, 2015, 2016, 2017, or 2018 (nine of the sixteen years at issue). (Id. at ¶ 36).

According to Judd, Case being away from his Sheriff's Office job more than 95% of the time presents unique challenges for his office to subjectively evaluate Case for promotions. Case proffers no evidence to suggest that any other putative class member was absent near the amount of time as he was. "[T]he typicality provision requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." Belles v. Schweiker, 720 F.2d 509, 515 (8th Cir. 1983). A typicality requirement is designed "to limit the class claims to those fairly encompassed by the named plaintiff's claims," Gen. Tel. Co., 446 U.S. at 330.

In the employment context, when a plaintiff seeks to represent a class of employees, the plaintiff fails to satisfy the typicality prong if his personal situation or choices give rise to defenses not available as an explanation for alleged discrimination of other class members. See, e.g., Bacon v. Honda Am. Mfg., Inc. 370 F.3d 565, 572-73 (6th Cir.

2004) <u>cert. denied</u> 543 U.S. 1151 (2005) (because Honda can assert legitimate non-discriminatory reasons for not promoting the proposed class representative, which reasons were not available as an explanation for discrimination against other members of the putative class, typicality was lacking). Here, typicality is lacking because Case's absences may give rise to a non-discriminatory explanation that would be inapplicable to the remainder of the proposed class and therefore potentially jeopardize the class's claims. Because Case's situation markedly differs from that of other members of the putative class, Case fails to satisfy the typicality requirement.

### 4. Adequate Representation

Case's unique situation also demonstrates why he fails to satisfy the final requirement for class certification under Rule 23(a): adequate representation. <u>See</u> Fed. R. Civ. P. 23(a)(4). This prerequisite requires that the class representative have common interests with the non-representative class members and requires that the representative demonstrates that he will vigorously prosecute the interests of the class through qualified counsel. <u>Piazza</u>, 273 F.3d at 1346. Here, Case's interests would not necessarily

align with veterans who do not miss work due to active or reservist obligations.

The adequacy of representation analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." Valley Drug Co., 350 F.3d at 1189 (quoting In re HealthSouth Corp. Sec. Litig., 213 F.R.D. 447, 460–61 (N.D. Ala. 2003)). "The existence of minor conflicts alone will not defeat a party's claim to class certification." Id. Rather, "the conflict must be a fundamental one going to the specific issues in controversy." Id.

Given the peculiar situation in which Case only worked the equivalent of 31 workweeks (less than 8 months) over a 16-year period, see (Doc. # 66 ¶ 34), Case's situation would not be representative of the class.

**B. Rule 23(b) Requirements**

Although the Court finds Case's Motion is due to be denied for failing to satisfy the Rule 23(a) criteria, the Court will briefly discuss why his Motion also fails to satisfy at least one of the alternative requirements of Rule 23(b).

Rule 23(b) provides:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

  (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

  (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

       (D) the likely difficulties in managing a class
       action.

Fed. R. Civ. P. 23(b).

In the Motion, Case seeks certification under Rule 23(b)(3). (Doc. # 55 at 15). Rule 23(b)(3) includes two requirements: (1) that questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance) and (2) that a class action is superior to other available methods for fair and efficient adjudication of the controversy (superiority). <u>Vega</u>, 564 F.3d at 1265.

### 1. Predominance

Under Rule 23(b)(3), "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1254 (11th Cir. 2004), <u>abrogated in part on other grounds by</u> <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639 (2008). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. Common issues of fact predominate if they have direct impact on every class member's effort to establish liability and on

every class member's entitlement to relief." Id. at 1255 (internal citations omitted). As stated in Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989), "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." (internal citations omitted).

"The predominance inquiry requires an examination of 'the claims, defenses, relevant facts, and applicable substantive law,' . . . to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting Klay, 382 F.3d at 1254).

In his Motion, Case claims he can establish there was a pattern or practice of discrimination that permeated the Sheriff's office. He argues that such department-wide policy supports a finding of a predominant common issue. And answering that common issue, he posits, will resolve the class's claims.

However, as discussed in the commonality section above, the proof Case offers to support the alleged discriminatory policies are individual comments directed to him by a single

decision-maker. Given the number of decision-makers potentially involved, Case cannot rely on the statements of a sole individual, particularly given his unique circumstances. Additionally, Case's statistical analysis, which randomly cites data from various years without providing comparative date for non-military promotions for the same time frame, is not evidence of a department-wide discriminatory animus. Case's individual issues appear to predominate over the class questions, and thus he fails to satisfy this prong of Rule 23(b).

### 2. Superiority

The superiority requirement of Rule 23(b)(3) focuses "not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay, 382 F.3d at 1269. "It is only when [management] difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper." Carnegie v. Mut. Sav. Life Ins. Co., No. 99-cv-3292, 2002 WL 32989594, at *24, (N.D. Ala. Nov. 1, 2002) (citation omitted).

The Court has examined the factors enumerated in Rule 23(b)(3)(A)-(D), such as "the class members' interest in individually controlling the prosecution . . . of separate actions," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and manageability issues. After so doing, the Court determines that class wide resolution of the dispute is not beneficial or favorable here. This is especially so because the Court has already determined that Case fails to satisfy the predominance prong of Rule 23(b)(3). <u>See</u> <u>Klay</u>, 382 F.3d at 1269 (recognizing the predominance analysis has a tremendous impact on the superiority analysis).

**IV.** **<u>Conclusion</u>**

Case fails to satisfy the requirements of Rules 23(a) and (b). As a result, the Court denies Case's Rule 23 Motion for Class Certification.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff's Rule 23 Motion for Class Certification (Doc. # 55) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of January 2020.

Virginia M. Hernandez Covington

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE